J. Sterling Halstead and Marcella S. Halstead v. Commissioner.
Halstead v. Commissioner
Docket No. 70532.
United States Tax Court
T.C. Memo 1960-106; 1960 Tax Ct. Memo LEXIS 182; 19 T.C.M. (CCH) 571; T.C.M. (RIA) 60106; May 27, 1960
*182 Louis D. Blum, C.P.A., 110 East 42nd Street, New York, N. Y., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined a deficiency in income tax in the amount of $743.44 for the year ending December 31, 1953, and an addition to tax in the amount of $867.89 for failure to pay installments of estimated tax when such installments were due. The sole issue is whether petitioner J. Sterling Halstead correctly reported for the calendar year 1953 $36,389.73 as his distributive share of the income of a partnership with a fiscal year ending March 31, 1953, or whether he should have reported $31,067.40 on a calendar year basis for the reason that no partnership existed. Other issues raised by petitioners have been abandoned by them. They allege in their petition that they overpaid their income tax for the year 1953 in the amount of $1,834.80. Findings of Fact Some of the facts have been stipulated and, as stipulated, are incorporated herein by reference. Petitioners, husband and wife, are residents of East Hampton, Long Island, New York. They filed a joint income tax return for the *183 year 1953 with the director of internal revenue, Lower Manhattan, New York. Marcella S. Halstead is involved herein because of the filing of a joint return. J. Sterling Halstead will hereinafter be referred to as the petitioner. During the years 1936 to 1945 petitioner and Benjamin D. Holt (hereinafter referred to as Holt) were partners in a law firm. Holt was general counsel for Refined Syrups & Sugars, Inc., and for a number of years the partnership received a retainer from this corporation. In the latter part of 1944 Holt became ill and withdrew from the practice of the law. An agreement was reached between petitioner and Holt that Holt would receive $200 a month from the fees paid by Refined Syrups & Sugars, Inc., and their partnership was dissolved as of March 31, 1945. On April 1, 1945 petitioner entered into a law partnership, with John Preston Phillips (hereinafter referred to as Phillips), and it operated until March 31, 1954, under the name of Halstead & Philips with a fiscal year ending March 31. Halstead & Phillips operated under annual written agreements which were substantially the same from April 1, 1945, through the fiscal year ending March 31, 1949. The last *184 of these agreements, for the fiscal year ending March 31, 1949, provided, in part, that petitioner, Phillips, and Holt associated themselves together for the practice of the law under the firm name of Halstead & Phillips; that petitioner and Phillips should be the general partners and Holt a special partner; that petitioner and Phillips should devote their time and best efforts to the business of the partnership, except that Phillips should continue to represent the City of Yonkers as Assistant Corporation Counsel as long as he saw fit to do so; and that the respective shares of the partners in the net earnings of the partnership should be determined as follows: "(a) The special partner, Benjamin D. Holt, shall be entitled to receive Two Hundred Dollars ($200.00) per month out of the fees paid by Refined Syrups & Sugars, Inc. so long as said client consents to said arrangement and in addition thereto shall receive such share in any other fees as shall be determined by agreement made at the time business is undertaken. "(b) J. Sterling Halstead and John Preston Phillips shall divide the remainder of the net income of the partnership paid them on the following basis: "(1) In the *185 absence of other specific agreement, fees earned through the joint efforts of the said two partners shall be divided in the proportion of the number of hours each partner has expended in said case or matter. "(2) In computing said apportionment services performed by any associate of the firm shall be treated as services of J. Sterling Halstead except that three hours time of said Associate shall be considered as one hour of time of J. Sterling Halstead. "(3) J. Sterling Halstead shall be entitled to receive all the fees paid by Refined Syrups & Sugars, Inc. less the payment provided for in paragraph (a) above to Benjamin D. Holt and shall pay and discharge all the office expenses of the firm at 70 Pine Street, New York, N. Y., including rent, stenographic and clerk hire and all miscellaneous expenses not chargeable to clients, provided, however, that in the event that due to any circumstances said Refined Syrups & Sugars, Inc. shall cease to be a client of the firm said obligation to pay such office expenses shall thereupon immediately cease. "(4) Subject to the provisions of (b)(1) and (2) above, the share of John Preston Phillips in the net earnings of the firm shall not be *186 less than the amount of fees earned by him and paid for his services rendered to his clients. Any portion of such a fee which shall, pursuant to a specific agreement, be paid to an associate shall be deducted first from the portion of the fee attributable to his services. "(5) The salary paid to John Preston Phillips as Assistant Corporation Counsel of the City of Yonkers shall not constitute firm income, but shall belong exclusively to said partner. "(6) Amounts paid the partners as referee's fees, executor's and trustee's commissions shall not be included in partnership income." The agreement also provided that no partner should use the name of the partnership except in the business of the partnership. Halstead & Phillips operated under the same conditions and in the same manner from April 1, 1949, through March 31, 1954, as it did from April 1, 1945, through March 31, 1949. The office lease, telephone and bank account were in the firm name, and it was on the office door and on letterheads. During the years 1945 through 1954 Phillips served as Assistant Corporation Counsel for the City of Yonkers, and also engaged in the general practice of the law. At the time the first *187 partnership agreement was signed in 1945 Phillips and petitioner had hoped that Phillips would develop sufficient business from this practice that he would be able to give up the position of Assistant Corporation Counsel and devote his full time to the business of the partnership. During the years 1945 to 1953 inclusive Phillips went to the office of Halstead & Phillips about once a month. In some of these years there were instances where petitioner and Phillips both worked on cases and divided the fees. During the years ending March 31, 1946, through March 31, 1954, petitioner believed that a partnership was in existence and filed partnership returns for the firm of Halstead & Phillips for each of those years. A firm of certified public accountants made an examination of the accounting records of Halstead and Phillips for the year ended March 31, 1953. Its report dated May 15, 1953, for the fiscal year ending March 31, 1953, shows fee income of $58,650 (which included a fee of $31,800 received from Refined Syrups & Sugars, Inc.), office expenses of $18,457.27, and net profit of $40,192.73, and that the partners' distributive shares of such profit transferred to their capital accounts *188 in accordance with the partnership agreement were as follows: J. S. Halstead
$36,389.73
J. P. Phillips
1,403.00
B. D. Holt
2,400.00
Petitioner reported the above amounts as the partners' shares of the profits of Halstead & Phillips in the partnership return filed for the fiscal year ending March 31, 1953, and also reported $36,389.73 as his share of the profits of Halstead & Phillips in his individual return for the calendar year 1953. The distributive share of Phillips amounting to $1,403 represented fees collected directly by him during the fiscal year ending March 31, 1953. The accountant's report on the firm of Halstead & Phillips for the year ended March 31, 1953, and the partnership return for the same year show the partners' capital account as of April 1, 1952, and March 31, 1953, to be as follows: April 1, 1952
March 31, 1953
Halstead
$241.86
$12.85
Phillips
43.47
43.47
Holt
A summary of income and expenses for the calendar year ending December 31, 1953, taken from the cash book of Halstead & Phillips, discloses the following: Fees
$52,285.00
Salaries and expenses
17,414.60
Net income
$34,870.40
Payments to: Benjamin D. Holt
$2,400
J. P. Phillips
1,403
3,803.00
$31,067.40
*189 Opinion RAUM, Judge: Petitioner alleges in his petition that the respondent erred in not correcting an overstatement of his income in his 1953 return which resulted from his reporting as his income for that year the distributive share of income allocated to him in the partnership return filed for Halstead & Phillips for the fiscal year ending March 31, 1953, and in not adjusting the income from his law practice to reflect the amount he received therefrom during the calendar year 1953. Petitioner testified that Halstead & Phillips operated under annual partnership agreements which were substantially the same from April 1, 1945, through the fiscal year ending March 31, 1949, and that it operated under the same conditions and in the same manner from April 1, 1949, through March 31, 1954. He also testified that partnership returns were filed for the years ending March 31, 1946, through March 31, 1954, because he believed there was a partnership. He admits that there was an intention to create a partnership but contends that no partnership existed during the year 1953 because none was in fact created. Petitioner argues that at the time the first agreement was signed Phillips intended *190 to resign the position he then held as Assistant Corporation Counsel of the City of Yonkers; that he never carried out this intention; that his failure to do so is inconsistent with his participation in law practice as a member of the partnership of Halstead & Phillips; that the signing of other partnership agreements "simply served to record his unfulfilled intention"; and that, therefore, the partnership agreement reflected only an intention to create a partnership in the future which was never carried out. The fallacy of this argument is that it places unwarranted emphasis on the provision of the agreement that permitted Phillips to continue to serve as Assistant Corporation Counsel as long as he saw fit to do so, and ignores other provisions of the agreement that contemplated his immediate participation in the business of the partnership. The latter provided that fees earned through the joint efforts of the partners and fees earned by each of them from the practice of law, with the exception of compensation received by Phillips for his services as Assistant Corporation Counsel and amounts paid to both as referee's fees, executor's and trustee's commissions, be included in partnership *191 income and specified the share thereof each partner would be entitled to receive. Petitioner testified that there were several instances in years other than the fiscal year ending March 31, 1953, in which he and Phillips jointly worked on cases. During that year there were no such instances, but the partnership return for that year discloses that fees in the amount of $1,403 collected by Phillips from clients were reported as partnership income and that this amount, under the terms of the agreement, was distributable to Phillips. In the light of this evidence we cannot find that the partnership agreement contemplated that the participation of Phillips as a partner was not intended to take effect until he terminated his employment as Assistant Corporation Counsel. It contemplated his immediate participation in the business of the partnership to the extent of any fees earned from the practice of his profession, with certain exceptions already noted. Petitioner also argues that no partnership existed during the fiscal year ending March 31, 1953, because the agreement placed control of the operation of the office of Halstead & Phillips in him only and obligated him to pay the expenses *192 of operating it. Concentration of management in the hands of a single partner does not of itself destroy the existence of a partnership. ; . And neither does a provision of a partnership agreement obligating one of the partners to pay the expenses of operating the office of the firm. Petitioner cites no cases holding that the sharing of office expenses is an indispensable test to be applied in determining the existence of a partnership. In some instances there is a sound reason why the burden of paying such expenses should be borne by one partner. Here the reason may have been that the partners believed that the principal benefits to be derived from the rental and use of the firm office would accrue to petitioner during the period of Phillips' employment as Assistant Corporation Counsel and that the obligation to pay them should, therefore, be his. Even if it be assumed they had some other undisclosed reason for imposing this obligation on petitioner, our conclusion would *193 not be affected thereby. Havng agreed to associate themselves together as partners, it was competent for them to determine that petitioner should pay the office expenses, and the existence of the partnership was not affected by that determination. Petitioner's remaining argument is that no partnership was in fact created because the partnership agreement contained no provision for the sharing of losses. The absence of such a provision is one of the factors to be considered in determining whether a partnership was created. It does not conclusively establish, however, that a partnership was not created where, as here, there is an agreement which otherwise manifests the intention of the parties to associate themselves together as partners in the practice of the law. The assumption by petitioner of liability for the payment of office expenses eliminated the possibility that the partnership might sustain a loss if in any year they exceeded income, and left it with no foreseeable partnership risks which might result in losses. Had any unforeseeable losses been sustained, an agreement to share *194 them might well have been implied from the partners' agreement to share profits. After a careful consideration of all the evidence, including the partnership agreement, petitioner's testimony that he believed a partnership was created thereby, and the filing of partnership returns over a period of nine years in which income was reported in accordance with the terms of the partnership agreement, our conclusion is, and we hold, that petitioners have not sustained their burden of proving that respondent erred in determining that they were liable for a deficiency in income tax for the year ending December 31, 1953. *
Decision will be entered for the respondent. Footnotes
*. The previous paragraph was deleted and a new paragraph was added by an official order of the Tax Court, dated August 24, 1960 and signed by Judge Raum.↩